## J. A. Hamilton v. Elizabeth Wells, Adm'x.

1. PARTNERSHIP—*Dissolution by Death—Sale of Assets by Administrator.*—The death of a member of a partnership operates as a dissolution of the firm, and where the surviving partner omits to assert his right to settle its affairs, an assignment of the assets of the deceased partner in the firm, by his administrator to his surviving partner, is sufficient to transfer whatever interest such deceased partner had in the assets of the firm at the time of his death.

Claim in Probate,—Trial in the Circuit Court of St. Clair County, on appeal from the County Court; the Hon. WILLIAM HARTNELL, Judge, presiding. Finding and judgment for defendant; appeal by claimant. Heard in this court at the August term, 1898. Affirmed. Opinion filed March 10, 1899.

Hamilton v. Wells.

TURNER & HOLDER and GEO. W. WALL, attorneys for appellant.

There is no presumption that a debt secreted by the partner owing it and unknown to the purchasing partner, is satisfied by a sale of the partner owing it. Clark v. Carr, 45 Ill. App. 479; Jones v. Bliss, 45 Ill. 143.

Such a transfer or settlement, however, must be deemed to have been made upon the supposition that the books were correct, if the selling partner has improperly balanced a charge against him by an erroneous credit, therefore the buyer is entitled to recover the amount. Vol. 17, Am. & Eng. En. of Law, page 1110.

It is enough to say that fraud vitiates all settlements. Hopkins v. Watt, 13 Ill. 298; McAuley v. Cooley (Neb.), 63 N. W Rep. 871; Branch v. Cooper (Ga.), 9 S. E. Rep. 130.

DILL & WILDERMAN, M. W. WEIR, M. McMURDO, and SNYDER & McMURDO, attorneys for appellee.

A sale by one partner to another of his entire interest, including all the assets, accounts, credits, etc., being merely a sale of the balance after all debts are paid, extinguishes all accounts standing upon the books against the seller, as well as all claims in his favor against the firm, because it raises a presumption well nigh, if not entirely, conclusive of a settlement. Am. & Eng. Ency. of Law, Vol. 17, p. 1109; Norman v. Hudleston, 64 Ill. 11; Hattenhauer v. Adamick, 70 Ill. App. 602; Over v. Hetherington, 66 Ind. 365; Thompson v. Lowe, 111 Ind. 272; Baldwin v. Bald, 48 N. Y. 673.

When a firm or partnership is dissolved by the retirement of a member, and the remaining members carry on the business, that fact does not, as between the remaining and the retiring members, continue the old firm, but the remaining members then constitute a new firm. Lindley on Partnership (Ewell's Ed.), side p. 113; 3 Kent's Com., side p. 63.

MR. JUSTICE BIGELOW delivered the opinion of the court. September 1, 1879, J. C. Hamilton, William Kunze, J.

H. Hamilton, A. J. Meek and A. H. Wells, formed a co-partnership under the firm name of "Hamilton, Kunze & Co.," for the purpose of doing a banking business at Marissa in St. Clair county. The capital of the firm was $6,000, of which J. C. Hamilton and William Kunze contributed $1,500 each, and the remaining partners contributed $1,000 each. The bank was called "The Bank of Marissa." March 22, 1884, J. H. Hamilton sold his interest in the firm to A. H. Wells; April 1, 1886, William Kunze sold his interest in the firm to A. H. Wells; January 2, 1891, A. J. Meek sold his interest in the firm to A. H. Wells, and on December 1, 1894, J. C. Hamilton sold his interest in the firm to appellant, when the firm name became "Hamilton & Wells." A. H. Wells was cashier of the bank and kept the books of the several firms from the organization of the first copartnership, until about seven months prior to his death, when appellant took charge of the bank books and the business of the bank.

On June 25, 1895, Wells died intestate and appellee (his widow) was appointed administratrix of his estate; and on the 26th of September, 1895, she, as such administratrix, sold the interest of the estate in the late firm of "Hamilton & Wells" to appellant, and executed to him the following assignment of such interest, viz.:

"Know all men by these presents: That I, Elizabeth J. Wells, as administratrix of the estate of Albert H. Wells, deceased, for value received, do hereby sell, assign and transfer to J. A. Hamilton, of Marissa, Ill., all the interest in the firm of Hamilton & Wells, bankers, of Marissa, Ill., that Albert H. Wells, now deceased, had in said firm at the time of his death; the said sale to include the debts due the said firm, as shown by the books and papers of said firm, except the interest of the said firm in certain notes enumerated and described in a schedule thereof, hereunto annexed, marked "Schedule A;" also except certain other notes enumerated and described in a schedule thereof hereunto annexed, marked "Schedule B;" and also except the sum of $411.02, which it is claimed by J. A. Hamilton may belong to J. H. Hamilton and William Kunze, but which amount, it is insisted by the undersigned administratrix of said estate, belongs to the said estate, which said sum is to

be held in trust by J. A. Hamilton, to be delivered to the undersigned as administratrix aforesaid, on or before the 6th day of July, 1897, with interest on said sum at the rate of three per cent per annum; provided the said J. H. Hamilton and William Kunze do not establish their claim to said sum according to law.

It is a part of the consideration of this sale and assignment, that the said J. A. Hamilton assumes the payment of all obligations, debts and liabilities of the said firm of Hamilton & Wells that the books and papers of said firm may show, or that may be known to exist from any other source of information at the date of the delivery of this assignment to the said J. A. Hamilton, and that the estate of Albert H. Wells, deceased, shall be and is hereby discharged from all liability to pay the obligations, debts and liabilities of the said firm of Hamilton & Wells, bankers, that the books and papers of said firm may show or that may be known at the delivery of this assignment to the said J. A. Hamilton. As to other liabilities, if any, the said J. A. Hamilton is only to pay his proper share.

Witness my hand and seal this 26th day of September A. D. 1895.

ELIZABETH J. WELLS, [SEAL.]
As Administratrix of the Estate of Albert H. Wells (deceased).

Appellant's counsel in their "statement" of the case say:

"The books showed that A. H. Wells owed the firm $4,819.24. The appellant filed his claim against said estate in the County Court to recover the indebtedness which A. H. Wells, deceased, owed the bank at the time of his death."

No claim is abstracted and none appears in the record. Nor does the record show any account of the "Bank of Marissa," or either of the firms, with A. H. Wells.

From the organization of the first firm until the death of A. H. Wells there had been five distinct firms, and the books of the prior firm or firms seem to have been turned over to the succeeding firm, and among the books was one called the "Certificate Register," in which entries were made of moneys deposited, for which certificates of deposit had been issued. This register, from November 2, 1883, to March 23, 1893 (both dates inclusive), it appears was kept by Wells, and of the certificates issued at and between

these dates appellant produced eighteen, aggregating in amount $4,573.60. Appellant then introduced evidence showing that the moneys received for these certificates had not been charged to the bank on its "daily balance" or "cash book." To this $4,573.60 appellant seems to have added $345.64, swelling the sum to $4,819.24, and claims this latter sum is the shortage of Wells, as shown by the books of the bank, and this seems to be the amount he seeks to recover from deceased's estate under that part of the assignment embraced in the following words, which his counsel have selected out and italicized, viz.: "The said sale to include the debts due the said firm as shown by the books and papers of said firm." It does not appear when or by what firm nine of the eighteen certificates were paid.

It appears that at times the cash on hand overran the amount as shown by the daily balance book, the excess at one time being upwards of $2,700, and there is no satisfactory explanation as to where this cash came from.

The books and papers of the firm of Hamilton & Wells offered in evidence did not show Wells was indebted to the firm in any sum whatever. The books and papers of other firms offered in evidence may have tended to show that he had used money belonging to such firms that he should have accounted for to them, but whether he had accounted for it or not does not affect this case, so far as we can see, as there is no evidence in the record showing on what terms all of the original partners except Wells sold their interests.

What the Wells interest in the firm really was could only have been ascertained by a settlement of the firm affairs, and this, under the law, appellant, as surviving partner, was bound to do; but the evidence shows that he did not want to settle the partnership affairs in that way, and insisted upon a purchase of the interest of the estate.

It appears that appellant had access to the books of the preceding firms, as well as those of his own firm, and had run the bank about ten months before he made the purchase, so it must be held that he purchased with "his eyes open" and upon his own judgment of the value of what he was buying.

To construe the language of the assignment, as contended for by counsel for appellant, would be in effect to hold that appellee sold a claim that the estate held against itself. The fallacy in the reasoning that leads to such an absurd conclusion lies in the assumption that the "Bank of Marissa" was a separate legal entity from the two persons composing the firm of "Hamilton & Wells," when it was neither more nor less than an alias firm name, for that and the preceding firms.

We must hold that appellant took by the assignment whatever interest his copartners owned in the assets of the firm at the time of his death (excepting, however, what was reserved) and no more, and that the claim sought to be probated against deceased's estate was not a debt due the firm of Hamilton & Wells.

The Circuit Court held as a proposition of law that neither that court nor the County Court had the jurisdiction of the case, and yet the court rendered judgment disallowing the claim, which of course, nullified its holding, and as the judgment is right, it will be affirmed.